**Booghier v. Wolfe**
*[Cite as 2 AOA 111]*

*Case No. CA-2638*
*Clark County, (2nd)*
*Decided April 27, 1990*

*R.C. 303.19*
*R.C. 519.19*
*R.C. 713.15*

*Stephen A. Schumaker by Susan H. Anderson, Assistant County Prosecutor, 50 East Columbia Street, P. O. Box 1608, Springfield, Ohio 45501, Attorney for Plaintiff-Appellee.*

*Eric P. Rotondo, 1276 Neil Avenue, Columbus, Ohio 43201, Attorney for Defendant-Appellant.*

WOLFF, P.J.

Dana R. Booghier, Clark County Zoning Inspector, filed a complaint which sought to enjoin Mark E. Wolfe's use of 3016 Lake Road, Medway, for an adult entertainment business. Booghier alleged that this use violated the Clark County Zoning Regulations.

The case was eventually submitted to the court of common pleas on stipulated facts filed December 2, 1988. Although it appears that the trial court and counsel for the parties contemplated, as of December 2, 1988, that briefs would be filed, the record fails to reflect that briefs were ever filed. The stipulated facts are as follows:

"1. The premises known as 3016 Lake Road, Medway, Ohio, and described as Lots 154, 155, 156, 157, 176, 177, 178, and 179, Map of Crystal Lakes, beginning in 1969 and continously thereafter (except as stated hereafter) were used for the operation of an adult entertainment establishment (as currently defined under Clark County Zoning Regulations). These premises were under the zoning jurisdiction of Crystal Lakes from 1969 to May 18, 1987.

"2. Following an investigation in the fall of 1985, a statutory nuisance action was filed against the land owner and business operators of the premises, based upon prostitution occurring on the premises, Nude dancing was not alleged to have been the nuisance activity. The action was captioned State ex rel Schumaker v. Rapid Inc., Clark County Court of Common Pleas, Case No. 85-CIV-1782, and was heard before Judge Lorig. The parties incorporate by reference the transcript of the trial proceedings. A copy of the Judgment Entry is attached hereto. Pursuant to the Judgment Entry, the premises were ordered padlocked from December 3, 1985 through December 3, 1986.

"3. The premises were purchased by Defendant Mark Wolfe by deed executed on July 29, 1986 and recorded on May 1, 1987. A copy of the deed is attached hereto. Subsequently to this purchase and during the closure, Mr. Wolfe attended the statutory auction of personal property located within the premises, purchased the back and front bar counters, and directed that

these items remain located in the premises. The dancing stage was not sold and remained on the premises.

"4. Mr. Wolfe intended to retain the adult entertainment use of these premises. Towards this goal, he granted to a tenant of his, John Canter, of (sic) the option to lease the premises for the operation of adult entertainment. John Canter was a tenant of Mr. Wolfe's in Franklin County who operated a similar establishment under a lease from Mr. Wolfe. A copy of the lease is attached hereto and contains an option provision for these premises therein.

"5. On or about May 5, 1987, the voters of Crystal Lakes approved incorporation of their zoning jurisdiction into that of Clark County and on May 18, 1987 County Zoning took effect. Clark County zoning regulations, in the absence of any intervening legal authority relevant hereto, would prohibit the use of these premises for adult entertainment, except if such a use existed as a valid non-conforming use prior to the adoption of the regulations.

"6. The re-opening of the premises for adult entertainment was delayed by John Canter's failure to effectuate his option. By Agreement executed on February 9, 1988, a copy of which is attached hereto, John Canter released his option on the premises.

"7. Mr. Wolfe sought to obtain a suitable tenant who would not repeat the prior course of misconduct that had led to the nuisance action. During October 1987, Mr. Wolfe negotiated with one June Tinney and Robert Wissinger to reopen the premises, featuring adult entertainment. This did happen during late October-early November, 1987. A copy of the Vendor's License obtained by Robert Wissinger is attached hereto.

"8. Under the facts stipulated above, the parties disagree as to whether or not there existed a valid non-conforming use of adult entertainment at these premises as of the incorporation of Clark County Zoning jurisdiction."

On August 25, 1989, the trial court entered the following judgment, which prompts this appeal:

"Based on the stipulated facts, the Court finds that the Defendant did not have a valid non-conforming use at the time of the incorporation of Clark County zoning jurisdiction."

THEREFORE, the Defendant is permanently enjoined from operating an adult entertainment business on the premises located at 3016 Lake Road, Medway, Ohio.

On appeal, Wolfe advances a single assignment or error as follows:

"The trial court erred as a matter of law, and to the prejudice of the Appellant, in failing to rule that the non-conforming use doctrine appearing in the Revised Code, Clark County Zoning Regulations, and case law, permitted the continued use of 3016 Lake Road, Medway, Ohio for adult entertainment, following adoption of Clark County Zoning Regulations for Medway, Ohio, and in failing to grant the Defendant-Appellant judgment accordingly."

Wolfe's two principal arguments in support of his assignment can be capsulized as follows:

"(1) There was a lawful existing use at the premises as of May 18, 1987, the effective date of the Clark County Zoning Regulations as to the premises (See R.C. 303.19);

"(2) Even if there were no lawful existing use May 18, 1987, there was less than a two-year interruption of the lawful use that ended December 3, 1985, when the premises were padlocked, and resumed in late October - early November, 1987, when the premises reopened, featuring adult entertainment. Pursuant to R.C. 303.19, Wolfe should not be penalized because there was a change of zoning within this less than a two-year period of interruption of a lawful use under the prior zoning."

R.C. 303.19, the definitive statute in this case, states in pertinent part:

"The lawful use of any dwelling, building or structure and of any land or premises, *as existing* and lawful at the time of enactment of a zoning resolution or amendment thereto, may be continued, although such use does not conform with the provisions of such resolution or amendment, but *if any such* nonconforming use is voluntarily discontinued for two years or more, any future use of land shall be in conformity with sections 303.01 to 303.25, inclusive, of the Revised Code." (Emphasis ours.)

R.C. 303.19 addresses two separate and distinct issues: (1) the *existence* of a lawful use *at the time* a change in zoning occurs, and (2) *discontinuation* of a nonconforming use which occurs *after* a change in zoning.

Booghier contends here, and we agree, that the dispositive issue is the first issue, i.e. whether a lawful use *existed* as of May 18, 1987, when the change of zoning became effective. Indeed, the parties stipulated this was the dispositive issue. See stipulation 8.

The trial court found that Wolfe "did not have a valid non-conforming use at the time of the incorporation of Clark County zoning jurisdiction."

The trial court's judgment can be read as determining that (a) there was no *existing* valid non-conforming use as of the change in zoning, (b) there was no valid non-conforming use as of the change in zoning, or (c) both (a) and (b), i.e. the contemplated use as of the change in zoning was not lawful.

The parties had stipulated that the premises had been used for adult entertainment from 1969 until December 3, 1985, when the premises were padlocked. The parties had also stipulated that use of the premises for adult entertainment would be permissible under Clark County Zoning Regulations "if such use *existed* as a valid non-conforming use prior to the adoption of the regulations." (Stipulation 5; emphasis ours.) We thus conclude that the trial court found that the use did not *exist* as of May 18, 1987, the date the zoning was changed.

The question for our determination becomes whether this finding is supported by the evidence. It is clear from the stipulations that the premises were not open for business as of the date the zoning was changed. See Stipulations 3, 4, 6, 7.

In *Torak v. Jones* (1983), 5 Ohio St. 3d 31, the court approved and followed *Smith v. Juillerat* (1954), 161 Ohio St. 424 and stated in part:

"In *Smith v. Juillerat, supra*, this court faced a similar situation. There, the property owner wished to strip mine his land. Prior to the adoption of the local zoning ordinance, which prohibited strip mining, the land owner had expended money in preparation for mining. Nevertheless, this court held that a nonconforming use had not been established, stating:

"Where no substantial nonconforming use is made of property, even though such use is contemplated and money is expended in preliminary work to that end, a property owner acquires no vested right to such use and is deprived of none by the operation of valid zoning ordinance denying the right to proceed with his intended use of the property."

In our judgment, the evidence in this case no more required the trial court to find that there was an existing nonconforming use when the zoning was changed, than did the evidence in *Smith v. Juillerat.*

Assuming that the judgment should be read to mean that there was no *valid* non-conforming use as of the change in zoning, we are satisfied that this determination would also find support in the record.

In its Entry and Order of Abatement of December 3, 1985, the trial court had made the following finding:

"The premises located at 3016 Lake Road, Medway, Ohio 45341, commonly known as the "Snow 'N Tell" and now also known as "Lucky Star Lounge," is a nuisance, in that: (a) it is a place in or upon which prostitution is conducted, permitted, continued, and exists: (b) it is a place in or upon which obscene films are exhibited and shown; and (c) it is a place in or upon which obscene film positives are photographed, exhibited, or shown."

In *Matthews v. Pernell* (Mont. App. 11543) January 18, 1990, unrep., this court affirmed a determination that a massage parlor which reopened after having been shut down as a nuisance did not qualify for prior, non-conforming use status. At pp. 8-9 we stated:

"Appellants also argue that the lack of new, substantive evidence presented in this action to support a denial of nonconforming use status deprives them of property arbitrarily and without due process of law. We do not agree. The determination in *Falke* (that the premises was a nuisance) was made by a court of competent jurisdiction before which Appellants appeared. That court's determination of illegality is binding (upon) Appellants and their business activity in any substantially similar form. No showing was made that the current business of "A Touching Place" was substantially or significantly different from that found to be a public nuisance. The trial court below properly took judicial notice of that prior determination of illegality pursuant to Civ. R. 44.1 in construing the applicability of R.C. 519.19, in which legality is a crucial element. There was no denial of due process."

In our judgment, the trial court could have reasonably inferred from the stipulations, that included the December 3, 1985, Entry and Order of Abatement, that the use, existing or contemplated, as of the change of zoning could not or would not be carried on absent the type of activities that had previously resulted in the declaration that the premises was a nuisance.

Accordingly, we reject Wolfe's first argument.

In his second argument, Wolfe contends that R.C. 303.19 entitles him to resume operating an adult entertainment business so long as that use has not been discontinued for a period of two years or more, and the change in zoning during that less than two-year period of interruption should not adversely affect this statutory entitlement.

The flaw in this argument is that the so-called "two-year state grandfathering statute", i.e. R.C. 303.19, simply does not apply to the

nsituation presented here. Under R.C. 303.19, the use that is "grandfathered" upon a change in zoning is only that use that was "existing and lawful" as of the date the zoning was changed. See, e.g. *Granato v. City of Dayton Board of Zoning Appeals* (Mont. App. CA 7200), August 27, 1981, unrep., cited by Wolfe. Here, the trial court found, and we think properly so, that use of the premises as an adult entertainment business did not *exist* when the zoning was changed, or that such use, as did exist or as was contemplated, was not *lawful.* Hence, the "grandfathering" provision of R.C. 303.19 is not implicated in this case.

Even assuming, *arguendo*, that Wolfe had a right under R.C. 303.19 or otherwise to resume operations after a less than two-year interruption of operations, and that this right survived the change of zoning, the record nevertheless supports the trial court's enjoining Wolfe's operations in this case. Any such right to resume operations presupposes the legality of those operations. As we have previously observed, the trial court could have reasonably inferred from the stipulations that the use or contemplated use of the premises as of the change of zoning would not or could not be carried on except as a nuisance.

Wolfe also cites R.C. 1.58 (A) (2) in support of his contention that the change in zoning could not deprive him of his "grandfather rights":

"(A) The reenactment, amendment, or repeal of a statute does not, except as provided in division (B) of this section:

(2) Affect any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred *thereunder.*" (Emphasis ours.)

Assuming *arguendo* the application of R.C. 1.58 (A) (2) to this change in zoning, we nevertheless reject the notion that this provision prevents the occurrence of what has happened in this case.

By its terms, R.C. 1.58 (A) (2) only operates as to rights acquired under the repealed statute. Until May 18, 1987, the premises were subject to Crystal Lakes zoning. See Stipulation 1. Adult entertainment was a permissible use of these premises under Cyrstal Lakes zoning. Wolfe did not acquire "grandfather rights" in the premises

under Crystal Lakes zoning because adult entertainment was a permissible use which could be interrupted for periods exceeding two years without consequence. "Grandfather rights" are acquired, if at all, pursuant to R.C. 303.19, and analogous provisions of the Clark County Zoning Regulations, which were not affected by the change in zoning.

The assignment of error is overruled.

*Judgment affirmed.*

FAIN, J., Concurs in judgment,
GRADY, J., Concurs in part and in judgment.

FAIN, J., Concurring in the judgment:

"I conclude that this case is similar to *Matthew v. Pernell* (January 18, 1990), Montgomery App. No. 11543, unreported, and requires the same result.

I find it unnecessary in this case to determine whether an owner of land that is "temporarily" out of use (i.e., during a period of less than two years) when his land is re-zoned to exclude the current use can constitutionally be given less protection than an owner of land that is in use at the time of re-zoning."

GRADY, J., Concurring:

I concur with that part of the opinion of the majority finding that Defendant-Appellant is not entitled to the protections of the prior non-conforming use exemptions of the Clark County Zoning Regulations because the prior use concerned was an illegal use and, thus, specifically excluded from the exemption provided. A determination that a use is illegal destroys the exemption for any subsequent use when the two fall within the same classification of the zoning code concerned. See *Matthew v. Pernell* (January 18, 1990), Montgomery App. No. 11543, unreported. Though the prohibition was adopted after Appellant took title, he had notice of the illegality of the use when he acquired title and may not have the benefit of the exemption requiring that the prior use relied upon be legal. For that reason the judgment of the trial court should be affirmed.